**UNITED STATES of America ex rel. Francis SPELLMAN, Jr., Plaintiff-Appellee,**

v.

**Glenn MURPHY, Defendant-Appellant. No. 11167.**

United States Court of Appeals Seventh Circuit. Dec. 13, 1954.

Latham Castle, Atty. Gen., Edward M. White, Asst. Atty. Gen., William C. Wines, Raymond S. Sarnow, A. Zola Groves, Asst. Attys. Gen., of counsel, for appellant.

Louis R. Gilbert, Rockford, Ill., Miller, Thomas, Hickey & Collins, Rockford, Ill., for appellee.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

**DUFFY, Chief Judge.**

Relator was in custody at the Illinois State Farm, a state penal institution. He petitioned for a writ of habeas corpus contending that he was apprehended, convicted and incarcerated while he was in the custody of a United States Marshal pursuant to the terms of probation imposed upon him by the United States District Court for the Northern District of Illinois, Western Division, and claimed that his incarceration in the state institution was, therefore, unlawful. The United States District Court filed findings of fact and conclusions of law holding that the Circuit Court of Ogle County lacked jurisdiction to proceed with the trial of relator which resulted in his conviction, and that the sentence imposed on him by said Court was in violation of the principle of comity existing between the State of Illinois and the United States and that the judgment of conviction was void, and ordered that relator be discharged by the warden of the Illinois State Farm from further imprisonment and detention.

It seems necessary to set out a somewhat detailed statement of the proceedings involving relator in the federal district court and the state circuit court, in order to fully understand the issues herein. On July 21, 1951 an information was filed with a United States Commissioner in the Northern District of Illinois charging relator with the violation of Title 15 U.S.C.A. §§ 714m(b) and (c) which sections cover larceny or embezzlement of funds or other property of the United States Commodity Credit Corporation. On January 21, 1952 a federal grand jury returned an indictment covering the above charge (Cause 52 CR 1) and relator was released on bail.

On October 1, 1951 the grand jury of the Circuit Court of Ogle County, Illinois, returned four indictments charging relator with making checks with the intent to defraud. The offenses contained in these charges were misdemeanors and were designated in the state court as Causes Nos. 8312, 8313, 8314 and 8315.

On December 27, 1952, in the United States District Court for the Northern District of Illinois, Western Division, relator entered a plea of guilty to the charge in the indictment there pending (Cause 52 CR 1). The Court sentenced relator to the custody of the Attorney General for imprisonment for a period of five years. The Court then suspended the execution of the prison sentence and placed relator on probation. One of the conditions of the order for probation was that for a period of three years relator would, once each week, surrender to the custody of the United States Marshal for a period of twenty-four hours.

In January, 1953, relator, without objection on his part to the state court's jurisdiction, was tried in the Circuit Court of Ogle County, on the charge contained in Cause No. 8315, and a jury returned a verdict of "Not Guilty". Thereafter, in April, 1953, the grand jury of the Circuit Court of Ogle County returned an indictment (Cause No. 8355) charging larceny by embezzlement of 40,-000 bushels of grain belonging to Commodity Credit Corporation. This indictment charged a felony.

On June 12, 1953, relator moved the Circuit Court of Ogle County to dismiss Cause No. 8314 for alleged failure to bring same to trial within 120 days from demand therefor. The Court denied this motion, but considered same to be a demand for trial.

On June 29, 1953 relator filed a motion in the Circuit Court of Ogle County in Cause No. 8355 attacking the jurisdiction of that Court on the ground, among others, that relator was, at that time, on probation from the United States District Court. On July 10, 1953, the Circuit Court of Ogle County overruled relator's motion and set Cause No. 8355 for trial on September 8, 1953 and also set the misdemeanor case No. 8314 for trial on the same day. This was done because the Court's jurisdiction to proceed in No. 8355 had been questioned.

On August 14, 1953 relator filed a petition in the United States District Court asking that the state authorities be restrained from proceeding in Cause No 8355. This motion was granted on October 12, 1953.

While this motion was pending the attention of the District Court was directed, informally, to the plan of the state authorities to proceed with the trial in Cause No. 8314 and the District Court's advice was sought whether such procedure was permissible. The Court refused to make any commitment on the ground that the matter had not been properly called to its attention.

Relator went to trial in the Circuit Court of Ogle County on the charges contained in Cause No. 8314 and on October 17, 1953 was found guilty. The Circuit Court sentenced relator to imprisonment for a period of one year and imposed a fine of $1,000.00. A 60 day stay of mittimus was granted. A motion for a new trial was denied in which relator did not raise any question as to the Circuit Court's jurisdiction, nor had any such question been raised at the trial. The stay of mittimus expired December 27, 1953.

On December 26, 1953 relator surrendered himself to the custody of the United States Marshal at Freeport, Illinois, for the purpose of carrying out the terms of the probation order of the United States District Court. He presented himself at the Stephenson County jail at Freeport, and, although it does not appear from the record, we assume that some arrangements had been made by the United States Marshal for the relator to surrender himself at that place. On December 27, 1953, at about 12:20 A.M., the Sheriff of Ogle County took custody of the relator and transported him to the Illinois State Farm at Vandalia, Illinois, for the purpose of carrying out the sentence imposed by the Circuit Court of Ogle County. On January 5, 1954 relator petitioned for habeas corpus, the merits of which are now before us on this appeal.

In the judgment entered by the District Court it was ordered that relator be forthwith discharged "from further imprisonment and detention by reason of

the said commitment issued by the Circuit Court of Ogle County in Cause No. 8314." It was the view of the District Judge that the trial and sentence of relator in Cause 8314 was void from the beginning.

The argument of relator that the state authorities violated the rule of comity in prosecuting him in Cause No. 8314 while he was on probation under the order of the Federal District Court, finds support in Grant v. Guernsey, 10 Cir., 63 F.2d 163, 164. In that case the defendant was at large under the terms of an order of probation from the Federal Court when the local authorities initiated criminal proceedings against him based on acts committed prior to the entry of the Federal probation order. The local authorities did not obtain the permission of the Federal Court for such prosecution. On a writ of habeas corpus the district court discharged the defendant. By a divided court, the Court of Appeals sustained the District Court holding that the action of the local authorities "was a direct interference with federal jurisdiction, and a violation of the rule of comity between federal and state courts". Several District Courts have followed the rule announced in the Guernsey case, to-wit: United States ex rel. Speece v. Toman, D.C., 23 F.Supp. 119; United States v. Pendergast, D.C., 28 F.Supp. 601; United States ex rel. Hall v. McGowan, D.C., 80 F.Supp. 792.

It should be noted that in the case at bar there is no contention that the Circuit Court of Ogle County did not have power or authority to hear and determine the type of charge brought against relator. Also, it is admitted that relator was physically present in the state court during the trial of Cause 8314. Furthermore, relator did not object to the trial being held, in fact, by means of petitions he insisted that the trial be held without further delay. Also, there was no objection registered by the United States District Court which knew, albeit informally, that the local authorities intended to proceed with the trial of Cause 8314.

The fact of custody is important in considering whether the state court had jurisdiction. In Stamphill v. Johnston, 9 Cir., 136 F.2d 291, the court said, page 292: "The personal presence of a defendant before a District Court gives that court complete jurisdiction over him, regardless of how his presence was secured, * * *."

In United States ex rel. Pasela v. Fenno, 2 Cir., 167 F.2d 593, the court used this language, page 595: "It may be that, where the second court obtains custody of a probationer, in the absence of the express consent of the first court, it does so wrongfully. This we need not decide. It is sufficient to say that, whether or not custody is rightly obtained, it gives the second court jurisdiction of the person. Ex parte Johnson, 167 U.S. 120, 17 S.Ct. 735, 42 L.Ed. 103 (illegal arrest); Malone v. United States, 9 Cir., 67 F.2d 339 (premature arrest); United States ex rel. Voigt v. Toombs, 5 Cir., 67 F.2d 744 (wrongful seizure beyond territorial jurisdiction of court); * * *. In the absence of objection on the part of the first court, no obstacle to the second court's assumption of jurisdiction is presented by the fact that the person concerned is on bail either pending trial in the first court or on appeal from its judgment. (Citations omitted.) We think the same rule applicable to a person on probation. The second court, having jurisdiction, then, may proceed unless there is objection on behalf of the first court; only where there is, need the second court, as a matter of comity, decline to exercise its jurisdiction. Powell v. Sanford, 5 Cir., 156 F.2d 355."

It was urged upon the Court of Appeals for the Second Circuit in the Fenno case that the rule announced by the Tenth Circuit in the Guernsey case should be followed, but the Court expressly refused to follow the rule laid down in the Guernsey case. Furthermore, a decision by the Court of Appeals of the Tenth Circuit in 1948, Craig v. Hunter, 167 F.2d 721, indicates that it is doubtful whether the Tenth Circuit would adhere to the rule laid down in the

Guernsey case. In the Craig case the appellant had been convicted and sentenced in the State of Washington but had escaped from the Washington penitentiary. He was apprehended in the State of Michigan and was held for extradition by the State of Washington authorities, and pending such holding was apprehended by the Federal authorities, convicted and sentenced for violation of the Dyer Act, 18 U.S.C.A. § 2311 et seq. The Court held that the fact he was at large upon a sentence from the State of Washington did not invest him with immunity to Federal imprisonment and incarceration. The Court cited its decision in Rawls v. United States, 10 Cir., 166 F.2d 532, where the court had held that the question of conflicting jurisdiction between a state and a federal court arose under the rule of comity and conferred no rights whatever upon a defendant who had violated the laws of both sovereigns. The Court there held that only the offended sovereign could raise the question by asserting its prior rights to the possession of the defendant in an appropriate proceeding.

A prisoner has no standing to choose between two sovereignties each desiring his custody. He does not have a choice of keepers. The sentence "was imposed only in the interest of the United States, not in any degree whatever as a benefit to the relator. He has been deprived of nothing to which he was entitled; if the United States has been so deprived, he may not vicariously assert its rights." United States ex rel. Buchalter v. Warden of Sing Sing Prison, 2 Cir., 141 F.2d 259, 260.

In Stripling v. United States, 10 Cir., 172 F.2d 636 a defendant on parole from a sentence imposed by a Kansas state court pleaded guilty in a United States District Court to a violation of the Dyer Act. The Court said it presumed that the State of Kansas had consented to the exercise of federal jurisdiction but stated, page 637: "Moreover, even if Kansas did not consent, the Federal court acquired jurisdiction over the person of Stripling, and its judgment was valid; and, if the United States, by exercising jurisdiction over the person of Stripling, violated the well-recognized rule of comity between sovereigns, only Kansas can object. Stripling, who violated the laws of both sovereigns, may not complain."

Neither the United States Marshal nor a deputy was present at the County jail when the state authorities took relator into custody. Although the details of the arrangement between the Marshal and the Sheriff for confining relator in the County jail of Stephenson County are not before us, we may infer that on December 27, 1953 at 12:20 a. m. relator was, technically, in the custody of the United States Marshal. We think, however, that the situation was no different, as far as relator's rights are concerned, than if the Sheriff had seized him while he was at large during his probationary period.

■ The terms of relator's probation were, indeed, unusual. The purpose of probation is not imprisonment, but rather of rehabilitation. The prevailing opinion among criminologists and probation officers,[1] as well as others who have studied the question,[2] is that mixed sentences of imprisonment and probation should not be imposed. Undesirable as the practice may be we think it was with-

1. See article *Conditions of Probation: Their Imposition and Application*, by Richard F. Doyle, Chief Probation Officer, Eastern District of Michigan, in September, 1953 issue of *Federal Probation*.

2. The report of a Special Committee of the Judicial Conference of the United States on Probation, in reporting to the annual meeting of said Conference in 1948, stated: "Your Committee finds it difficult to reconcile with the theory behind probation a sentence under which the offender serves a term in prison, and, after his release commences a period of probation. It would seem that if the prison sentence is justifiable, then probation is not, and if probation is desirable, then the jail sentence is a mistake." See also article by Hon. Henry P. Chandler in October, 1951 issue *Virginia Law Review*.

in the power of the District Court to have imposed the mixed sentence in the case at bar.

We hold that as relator was physically present at the trial, the Circuit Court of Ogle County, Illinois, had jurisdiction to proceed with the trial of relator in Cause No. 8314, and to impose a sentence of imprisonment upon the jury's verdict of guilty.

When the Sheriff of Stephenson County took custody of relator while he was in the technical custody of the United States Marshal, it was a high-handed procedure. As stated heretofore, the relator is in no position to complain, but nothing we have said in this opinion is intended to pass upon the right of the offended sovereign, viz., the United States government, to invoke the rule of comity against the state and local authorities.

Judgment reversed with instructions to remand the relator to the custody of the warden of the Illinois State Farm.

Reversed.